

**CT Corporation**
**Service of Process Notification**
05/13/2022
CT Log Number 541567081

## Service of Process Transmittal Summary

TO: Maureen Mulholland
Monro Muffler Brake Inc.
200 HOLLEDER PKWY
ROCHESTER, NY 14615-3808

RE: **Process Served in Kentucky**

FOR: Monro, Inc. (Domestic State: NY)

#### ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

| | |
|---|---|
| TITLE OF ACTION: | Re: ARTHUR DUKES // To: Monro, Inc. |
| CASE #: | 22CI002300 |
| NATURE OF ACTION: | Employee Litigation - Discrimination |
| PROCESS SERVED ON: | C T Corporation System, Frankfort, KY |
| DATE/METHOD OF SERVICE: | By Certified Mail on 05/13/2022 |
| JURISDICTION SERVED: | Kentucky |
| ACTION ITEMS: | SOP Papers with Transmittal, via UPS Next Day Air , 1ZX212780108831840 |
| | Email Notification, Brian D'Ambrosia  Brian.D'Ambrosia@monro.com |
| | Email Notification, Maureen Mulholland  Maureen.Mulholland@monro.com |
| REGISTERED AGENT CONTACT: | C T Corporation System |
| | 306 W. Main Street |
| | Suite 512 |
| | Frankfort, KY 40601 |
| | 866-539-8692 |
| | CorporationTeam@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

EXHIBIT A

Page 1 of 1

**CERTIFIED MAIL**™

NEOPOST
05/10/2022
US POSTAGE $013.53⁰



ZIP 40601
041M11456493

USPS CERTIFIED MAIL

David L. Nicholson, Jefferson
Circuit Clerk
600 West Jefferson Street
Louisville, KY 40202-4731



Case Number: 22-CI-002300

9236 0901 9403 8375 8914 78

Restricted Delivery

CT CORPORATION SYSTEM
306 W. MAIN STREET
SUITE 512
FRANKFORT, KY 40601

40601Э1840 C003

| AOC-E-105   Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice   *Courts.ky.gov*<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #: **22-CI-002300**<br>Court:   **CIRCUIT**<br>County: **JEFFERSON Circuit** |

*Plantiff,* **DUKES , ARTHUR VS. MONRO, INC,** *Defendant*

TO: **CT CORPORATION SYSTEM**
   **306 W. MAIN STREET**
   **SUITE 512**
   **FRANKFORT, KY 40601**

Memo: Related party is MONRO, INC

The Commonwealth of Kentucky to Defendant:
**MONRO, INC**

   You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*David L. Nicholson*

Jefferson Circuit Clerk
Date: **5/10/2022**

---

| **Proof of Service** |
| --- |
| This Summons was: |
| ☐ Served by delivering a true copy and the Complaint (or other initiating document) |
| To: _____ |
| ☐ Not Served because: _____ |
| Date: _____, 20_____        _____<br>                                        Served By<br>                                        _____<br>                                        Title |

Summons ID: 459513530769546@00001001465
CIRCUIT: 22-CI-002300 Certified Mail
DUKES , ARTHUR VS. MONRO, INC



eFile(



COMMONWEALTH OF KENTUCKY
JEFFERSON COUNTY CIRCUIT COURT
CIVIL ACTION NO.:_____

## VERIFIED COMPLAINT

**ARTHUR DUKES**                                    **PLAINTIFF**
**7210 QUAIL RIDGE ROAD**
**LOUISVILLE, KY 40291**

v.

**MONRO, INC.**                                     **DEFENDANT**
**200 HOLLEDER PARKWAY**
**ROCHESTER, NY 14615**

   Registered Agent:
   **CT CORPORATION SYSTEM**
   **306 W MAIN STREET SUITE 512**
   **FRANKFORT, KY 40601**

**** **** ****

Comes now the Plaintiff, Arthur William Dukes ("Mr. Dukes" or "Plaintiff"), by and through counsel, and for his Complaint against Monro, Inc. ("Defendant"), states as follows:

### JURISDICTION AND VENUE

1.  Mr. Dukes lives and resides in Louisville, Kentucky, and is a resident of Jefferson County, Kentucky.

2.  Monro, Inc. is incorporated in New York and has its principal place of business in Rochester, New York.

1

3.   Monro, Inc. avails itself to the jurisdiction of this Court under KRS §
     454.210(2)(a)(1), by transacting business in the Commonwealth. Specifically, Monro,
     Inc. operates a facility in Louisville, Kentucky.

4.   Mr. Dukes' cause of action arises out of events that took place in Louisville,
     Kentucky.

5.   Mr. Dukes' damages exceed the threshold requirement of five-thousand dollars
     ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

6.   Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in
     KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is
     being brought in the Circuit Court in the county in which the alleged action arose.

### FACTUAL ALLEGATIONS

7.   On or around March of 2016, Mr. Dukes started his employment at "Tires Now", a
     subsidiary company of Defendant.

8.   Monro, Inc. is a large company that specializes in auto service and providing tires.
     Defendant operates more than 1,264 stores in the United States, including "Tire
     Now".

9.   Mr. Dukes is employed as a truck driver who distributes tires to multiple retailers in
     Kentucky.

10.  Mr. Dukes has an hourly salary of $16.30 an hour.

11.  In July of 2020, Mr. Dukes and Brian Osborne ("Mr. Osborne"), a manager at Tires
     Now, got into a verbal argument that resulted in Mr. Osborne attempting to take Mr.
     Dukes off his route completely.

2

12. Prior to his verbal argument with Mr. Osborne, Mr. Dukes had worked a five-day-a-week shift since he began his employment at Monro, Inc.

13. A day after Mr. Dukes and Mr. Osborne's argument, Mr. Dukes and Mr. Osborne had a conference call with Lyn Jennings ("Ms. Jennings"), who at the time worked in Human Resources for Defendant. After the conference call, Mr. Dukes was put back on his route, but had his workdays reduced from five to four days a week.

14. This resulted in a substantial pay reduction, around $400 weekly, for Mr. Dukes, as his daily shift is from 6:00 A.M. to 5:00 P.M. and the lost day of work resulted in Mr. Dukes losing eleven hours of overtime pay a week.

15. Of the thirteen (13) truck drivers employed by the defendant, Mr. Dukes is the only one who works a four-day workweek.

16. Mr. Dukes is one of two African-Americans employed as truck drivers for Defendant. Defendant has a history of discriminating against African-Americans.

17. At least five (5) truck drivers with lower seniority than Mr. Dukes are currently operating an "out of town" route and receive overtime pay due to the route specifications.

18. Mr. Dukes spoke with Ms. Jennings several times to discuss the situation and the fact that he was treated differently than all the other drivers.

19. Mr. Dukes also called the employee hotline number to address his grievances with the company directly to no avail.

20. Also, a supervisor, whose job duties do not include the operation of a vehicle, has to run Mr. Duke's route the day that he is not on the schedule. The supervisor did not understand why he had to operate Mr. Dukes' route. This supervisor is no longer

3

employed at Defendant due to the long hours he had to work to make up for Mr. Dukes being left off the schedule.

21.   Furthermore, Mr. Osborne specifically discriminated against and targeted Mr. Dukes beyond reducing his pay and days worked.

22.   Mr. Osborne wrote a disciplinary report on Mr. Dukes after Mr. Dukes refused to start everyone's vehicles before they arrived at work.

23.   Mr. Osbourn was the only person that was ever asked to start other employee's trucks

24.   Mr. Dukes felt uncomfortable doing this task due to the fact that many people keep personal belongings in their vehicles and might have felt that this invaded their privacy. There has never been a precedent of employees starting other employee's vehicles for them at Tires Now.

25.   Many employees show up late to work, or miss work altogether, and did not receive any form of disciplinary action.

### COUNT I. HOSTILE WORK ENVIRONMENT

26.   Mr. Dukes hereby incorporates each and every allegation contained in paragraphs one (1) through twenty-four (24) above, as if fully set forth with particularity herein.

27.   The Kentucky Civil Rights (KCRA) prohibits severe or pervasive conduct which leads to a hostile work environment.

28.   Defendant fostered a hostile work environment that promoted disrespectful and discriminatory action against Mr. Dukes.

29.   Defendant allowed and continues to allow Mr. Osborne to harass and discriminate against Mr. Dukes because of a verbal argument that occurred in July of 2020.

4

30.    Mr. Osborne continues to penalize Mr. Dukes by not assigning him his full work schedule, even though the disagreement took place over a year ago.

31.    Mr. Osborne's expectation of total obedience has resulted in Mr. Dukes suffering stress and anxiety, even in Mr. Osborne's directives are not customary nor consistent with policy.

32.    The hostile work environment that Defendant has allowed to occur has resulted in Mr. Dukes' being formally written up for insubordination and could jeopardize his employment at Tires Now.

33.    The actions taken by Defendant are in direct violation of Defendant's policies and the KCRA.

34.    Defendant maintained a hostile work environment by taking no action to correct the situation.

35.    Mr. Osbourne's treatment of Mr. Dukes continued long after Mr. Dukes reported the behavior to management and the hotline number.

### COUNT II: DISCRIMINATION BASED ON RACE

36.    Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through forty-one (41) above, as if fully set forth with particularity herein.

37.    Mr. Dukes' claims against Defendant arise under the Kentucky Civil Rights Act, KRS § 344 et seq. and relate to his employment at Tires Now.

38.    KRS § 344.040(1) states: "It is an unlawful practice for an employer [t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race..."

5

39.   Mr. Dukes is an African-American and, therefore, falls into a protected class.

40.   Monro, Inc. is an employer within the meaning of KRS § 344.

41.   Mr. Dukes was a victim of adverse action, including discrimination, which was severe, pervasive, and seriously impacted Mr. Dukes' ability to perform his job.

42.   The discrimination was based on Mr. Dukes' race. The discrimination had the effect of unreasonably interfering with Mr. Dukes' work performance by creating an intimidating, hostile, offensive, and overbearing work environment.

43.   Mr. Dukes was subject to unequal treatment from his supervisors, as Caucasian employees were allowed to continue to work there five days a week schedule.

44.   Furthermore, Mr. Dukes is one of two African-Americans employed as truck drivers for Defendant. Defendant has a history of discriminating against African-Americans.

45.   The other African-American truck driver was subject to discrimination when he was hurt on the job and was denied back pay. Other Caucasian drivers have been hurt on the job and have not been denied back pay as a result of their injuries.

46.   All of these instances of misconduct by Defendant violate KRS § 344.

47.   Mr. Dukes is the only driver with a four day work week and has the seniority to have higher paying out of town routes.

48.   Mr. Osbourne has denied Mr. Dukes the routes that every other Caucasian has the opportunity to receive.

49.   As a direct and proximate cause of Defendant's actions described herein, Mr. Dukes has suffered from a loss of income, emotional stress, and mental anxiety, for all of which he should be compensated

## COUNT II. RETALIATION UNDER KRS §344.280

6

50. Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through thirty-three (33) above, as if fully set forth with particularity herein.

51. KRS § 344.280 states: "It shall be an unlawful practice for a person... [t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing..."

52. Defendant specifically retaliated against Mr. Dukes' after he was involved in an argument with Defendant by reducing Mr. Dukes' days worked a week from five to four.

53. This retaliatory action has caused Mr. Dukes to lose somewhere between $300-$400 a week and this sudden and significant loss of income has affected Mr. Dukes' mental health and financial security.

54. Furthermore, Defendant specifically retaliated against Mr. Dukes by making him start everyone's vehicles for them, a practice that has never been a part of the standard operating procedure.

55. Mr. Dukes did not feel comfortable doing so, due to the fact that many employees keep personal belongings in their vehicles. When Mr. Dukes stated that he was uncomfortable with performing this task, he was formally disciplined by Defendant for insubordination. This formal write-up, a clear retaliatory action, could impact his job status in the future.

56. Mr. Dukes' work schedule was reduced as a result of Mr. Dukes reporting his concerns of the unfair treatment to the employee hotline and Ms. Jennings.

7

57.     These actions taken by Defendant violate KRS § 344.280, and they should be held
        liable for any damages accrued to Mr. Dukes.

58.     .

### COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59.     Plaintiff hereby incorporates each and every allegation contained in paragraphs one
        (1) through fifty-three (53) above, as if fully set forth with particularity herein.

60.     Kentucky recognizes a cause of action for the intentional infliction of emotional
        distress absent any physical injuries when the following elements are shown: (1) the
        wrongdoer acted intentionally or recklessly; (2) the conduct was extreme and
        outrageous; (3) there is a causal connection between the conduct and emotional
        distress; and (4) the emotional distress is severe. *Craft v. Rice*, 671 S.W.2d 247, 249
        (Ky. 1984).

61.     Mr. Dukes was subject to emotional distress when Defendant allowed Mr. Dukes'
        hours to be reduced and when they allowed Mr. Dukes to receive a written
        disciplinary write-up for insubordination.

62.     These actions have caused Mr. Dukes to suffer from emotional distress, as Mr. Dukes
        has lost a significant amount of income due to Defendant's actions and this along
        with his disciplinary write-up, have caused him severe stress about his future and
        ability to earn a living wage at Tires Now.

### COUNT V: CONSTRUCTIVE DISCHARGE

63.     Plaintiff hereby incorporates each and every allegation contained in paragraphs one
        (1) through fifty-seven (57) above, as if fully set forth with particularity herein.

8

64. Under Kentucky law, the standard for a constructive discharge claim is "whether, based upon objective criteria, the conditions created by the employer's actions are so intolerable that a reasonable person would feel compelled to resign." *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 807 (Ky. 2004).

65. Mr. Dukes was subject to constructive discharge when his hours and pay were reduced to an amount that is far below his qualifications and seniority status. These actions were a calculated measure to ensure that Mr. Dukes had no other option but to quit his position and find new employment.

66. This instance shows that there were efforts made by Defendant to create an intolerable working condition for Mr. Dukes so that he would have no choice but to quit his job.

67. Mr. Dukes has not quit his job at Tires Now at the moment, but the conditions opposed to him, including the significant reduction in pay, are leaving very few options but to find new employment.

9

## PRAYER FOR RELIEF

WHEREFORE, Mr. Dukes prays that this Court:

1. Declare that Defendant's conduct is in violation of Mr. Dukes' rights and;

2. Award Mr. Dukes compensatory damages in such amounts as shall be proven at trial for his economic and other losses; and

3. Award Mr. Dukes back pay and/or damages equivalent to his lost wages from being unjustly reduced in his work schedule; and

4. Award Mr. Dukes damages in an amount to be proven at trial for his medical expenses which Defendants caused by their illegal actions toward him and;

5. Award Mr. Dukes damages in an amount to be proven at trial for the humiliation, embarrassment, personal indignity, emotional distress, and mental anguish which Defendant caused Mr. Dukes by their illegal actions toward him and;

6. Award Mr. Dukes costs, interests, and attorney's fees expended herein and;

7. Grant Mr. Dukes such further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Mr. Dukes, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward Jr.
Samuel G. Hayward Jr.
ADAMS HAYWARD & WELSH
4036 Preston Highway
Louisville, Kentucky 40213
(502) 366-6456
sghayw@gmail.com

10

## VERIFICATION

I have read the foregoing statements and they are true and accurate to the best of my knowledge and belief.

Arthur William Dukes

COMMONWEALTH OF KENTUCKY)
COUNTY OF JEFFERSON                )
Subscribed and sworn to before me by Arthur William Dukes on this _11_ day of _Aoril_ 2022.

ID: KYNP47391
Exp: 3-21-26

9

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000001 of 000022

[ELECTRONICALLY FILED]

CASE NO. 22-CI-02300                                    JEFFERSON CIRCUIT COURT


ARTHUR DUKES                                                              PLAINTIFF


v.              **DEFENDANT'S ANSWER TO VERIFIED COMPLAINT**


MONRO INC.                                                                DEFENDANT

\*   \*   \*   \*   \*


Defendant Monro Inc. ("Monro" or "Defendant"), by counsel and pursuant to CR 7 and 8, for its Answer to Plaintiff's Verified Complaint states as follows:

## PARTIES

1.      Mr. Dukes lives and resides in Louisville, Kentucky, and is a resident of Jefferson County, Kentucky.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 1 of Plaintiff's Verified Complaint and therefore denies the same.**

2.      Monro. Inc. is incorporated in New York and has its principal place of business in Rochester, New York.

**ANSWER:    In answer to paragraph 2, Defendant states it is incorporated under the laws of the state of New York and is duly registered as a foreign corporation in the Commonwealth of Kentucky.   Defendant admits its principal place of business is in Rochester, New York.**

1

3.     Monro, Inc. avails itself to the jurisdiction of this Court under KRS § 454.210(2)(a)(1), by transacting business in the Commonwealth.  Specifically, Monro, Inc. operates a facility in Louisville, Kentucky.

**ANSWER:   The allegations contained in paragraph 3 are legal conclusions to which no response is required.  To the extent a response may be required, Defendant admits it transacts business in the Commonwealth of Kentucky and operates a Tires Now location in Louisville, Kentucky.**

4.     Mr. Dukes' cause of action arises out of events that took place in Louisville, Kentucky.

**ANSWER:   In answer to paragraph 4, Defendant admits Plaintiff's Verified Complaint purports to allege causes of action arising out of events taking place in Louisville, Kentucky, but Defendant specifically denies any violation of law occurred and that Plaintiff is entitled to damages or relief of any nature whatsoever.  To the extent paragraph 4 incorporates other allegations contained in Plaintiff's Verified Complaint, Defendant incorporates its responses and affirmative defenses to all such allegations as if fully set forth herein.  Defendant denies any averments and allegations contained in paragraph 4 not specifically admitted herein.**

5.     Mr. Dukes' damages exceed the threshold requirement of five-thousand dollars ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

**ANSWER:   The allegations contained in paragraph 5 are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies Plaintiff's damages exceed five thousand dollars ($5,000.00) and specifically denies any violation of law occurred and that Plaintiff is entitled to damages or relief of any nature**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000002 of 000022

whatsoever.

6.      Plaintiffs causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

**ANSWER: Defendant admits Plaintiff's Verified Complaint purports to allege various claims for relief and damages, including those arising under KCRA and KRS 344 *et seq*.  Defendant specifically denies any violation of the KCRA, or other law occurred, and further denies that Plaintiff is entitled to damages or relief of any nature whatsoever.  In further answer, Defendant admits Plaintiff's Verified Complaint contains purported facts, which if true, would make venue proper in this Court, but specifically denies such allegations. To the extent paragraph 6 incorporates other allegations contained in Plaintiff's Verified Complaint, Defendant incorporates its responses and affirmative defenses to all such allegations as if fully set forth herein.  Defendant denies any averments and allegations contained in paragraph 6 not specifically admitted herein.**

## FACTUAL ALLEGATIONS

7.      On or around March of 2016, Mr. Dukes started his employment at "Tires Now", a subsidiary company of Defendant.

**ANSWER:    Defendant denies the allegations contained in paragraph 7 of Plaintiff's Verified Complaint regarding the date Plaintiff's employment started, but admits he worked at Tires Now beginning on or about August 8, 2016.**

8.      Monro, Inc. is a large company that specializes in auto service and providing tires. Defendant operates more than 1,264 stores in the United States, including "Tire Now".

**ANSWER:    Defendant admits it is an auto service and tire provider that operates**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000004 of 000022

**more than 1,264 stores in the United States, including under the Tires Now brand.**

9.      Mr. Dukes is employed as a truck driver who distributes tires to multiple retailers in Kentucky.

**ANSWER:  Defendant admits the allegations contained in paragraph 9 of Plaintiff's Verified Complaint.**

10.     Mr. Dukes has an hourly salary of $16.30 an hour.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 10 of  Plaintiff's Verified Complaint and therefore denies the same.**

11.     In July of 2020, Mr. Dukes and Brian Osborne ("Mr. Osborne"), a manager at Tires Now, got into a verbal argument that resulted in Mr. Osborne attempting to take Mr. Dukes off his route completely.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 11 of Plaintiff's Verified Complaint and therefore denies the same.**

12.     Prior to his verbal argument with Mr. Osborne, Mr. Dukes had worked a five-day-a-week shift since he began his employment at Monro, Inc.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 12 of Plaintiff's Verified Complaint and therefore denies the same.**

13.     A day after Mr. Dukes and Mr. Osborne's argument, Mr. Dukes and Mr. Osborne bad a conference call with Lyn Jennings ("Ms. Jennings"), who at the time worked in Human Resources for Defendant. After the conference call, Mr. Dukes was put back on his route, but had

his workdays reduced from five to four days a week.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 13 of Plaintiff's Verified Complaint and therefore denies the same.**

14.    This resulted in a substantial pay reduction, around $400 weekly, for Mr. Dukes, as his daily shift is from 6:00 A.M. to 5:00 P.M. and the lost day of work resulted in Mr. Dukes losing eleven hours of overtime pay a week.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 14 of Plaintiff's Verified Complaint and therefore denies the same.**

15.    Of the thirteen (13) truck drivers employed by the defendant, Mr. Dukes is the only one who works a four-day workweek.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 15 of Plaintiff's Verified Complaint and therefore denies the same.**

16.    Mr. Dukes is one of two African-Americans employed as truck drivers for Defendant. Defendant has a history of discriminating against African-Americans.

**ANSWER:    Defendant denies the allegations contained in paragraph 16 of Plaintiff's Verified Complaint.**

17.    At least five (5) truck drivers with lower seniority than Mr. Dukes are currently operating an "out of town" route and receive overtime pay due to the route specifications.

**ANSWER:    Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 15 of Plaintiff's Verified Complaint and therefore**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000005 of 000022

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000006 of 000022

**denies the same.**

18.     Mr. Dukes spoke with Ms. Jennings several times to discuss the situation and the fact that he was treated differently than all the other drivers.

**ANSWER:     Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 18 of Plaintiff's Verified Complaint and therefore denies the same.**

19.     Mr. Dukes also called the employee hotline number to address his grievances with the company directly to no avail.

**ANSWER:     Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 19 of Plaintiff's Verified Complaint and therefore denies the same.**

20.     Also, a supervisor, whose job duties do not include the operation of a vehicle, has to run Mr. Duke's route the day that he is not on the schedule. The supervisor did not understand why he had to operate Mr. Dukes' route. This supervisor is no longer employed at Defendant due to the long hours he had to work to make up for Mr. Dukes being left off the schedule.

**ANSWER:     Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 20 of Plaintiff's Verified Complaint and therefore denies the same.**

21.     Furthermore, Mr. Osborne specifically discriminated against and targeted Mr. Dukes beyond reducing his pay and days worked.

**ANSWER:     Defendant denies the allegations contained in paragraph 21 of Plaintiff's Verified Complaint.**

22.     Mr. Osborne wrote a disciplinary report on Mr. Dukes after Mr. Dukes refused to

start everyone's vehicles before they arrived at work.

**ANSWER:   In answer to paragraph 22 of Plaintiff's Verified Complaint, Defendant admits Plaintiff received performance coaching on or about February 19, 2021, for failing to follow his supervisor's instructions related to starting vehicles.**

23.     Mr. Osbourn was the only person that was ever asked to start other employee's trucks.

**ANSWER:   Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 23 of Plaintiff's Verified Complaint and therefore denies the same.**

24.     Mr. Dukes felt uncomfortable doing this task due to the fact that many people keep personal belongings in their vehicles and might have felt that this invaded their privacy. There has never been a precedent of employees starting other employee's vehicles for them at Tires Now.

**ANSWER: Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 24 of Plaintiff's Verified Complaint and therefore denies the same.**

25.     Many employees show up late to work, or miss work altogether, and did not receive any form of disciplinary action.

**ANSWER:   Defendant denies the allegations contained in paragraph 25 of Plaintiff's Verified Complaint.**

## COUNT I. HOSTILE WORK ENVIRONMENT

26.     Mr. Dukes hereby incorporates each and every allegation contained in paragraphs one (1) through twenty-four (24) above, as if fully set forth with particularity herein.

**ANSWER:   In answer to paragraph 26 of Plaintiff's Verified Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000007 of 000022

affirmative defense made or set forth in its answers to paragraphs 1 through 25 as though fully stated herein.

27.     The Kentucky Civil Rights (KCRA) prohibits severe or pervasive conduct which leads to a hostile work environment.

**ANSWER:   The allegations contained in paragraph 27 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states the Kentucky Civil Rights Act speaks for itself and denies any violation of KCRA or other law occurred.**

28.     Defendant fostered a hostile work environment that promoted disrespectful and discriminatory action against Mr. Dukes.

**ANSWER:   Defendant denies the allegations contained in paragraph 28 of Plaintiff's Verified Complaint.**

29.     Defendant allowed and continues to allow Mr. Osborne to harass and discriminate against Mr. Dukes because of a verbal argument that occurred in July of 2020.

**ANSWER:   Defendant denies the allegations contained in paragraph 29 of Plaintiff's Verified Complaint.**

30.     Mr. Osborne continues to penalize Mr. Dukes by not assigning him his full work schedule, even though the disagreement took place over a year ago.

**ANSWER:   Defendant denies the allegations contained in paragraph 30 of Plaintiff's Verified Complaint.**

31.     Mr. Osborne's expectation of total obedience has resulted in Mr. Dukes suffering stress and anxiety, even in Mr. Osborne's directives are not customary nor consistent with policy.

**ANSWER:   Defendant denies the allegations contained in paragraph 31 of**

8

Plaintiff's Verified Complaint.

32.    The hostile work environment that Defendant has allowed to occur has resulted in Mr. Dukes' being formally written up for insubordination and could jeopardize his employment at Tires Now.

**ANSWER:  In answer to paragraph 32 of Plaintiff's Complaint, Defendant denies a hostile work environment exists and states Plaintiff being written up for insubordination was the result of Plaintiff's refusal to follow a supervisor's instructions.**

33.    The actions taken by Defendant are in direct violation of Defendant's policies and the KCRA.

**ANSWER:   The allegations contained in paragraph 33 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 33.**

34.    Defendant maintained a hostile work environment by taking no action to correct the situation.

**ANSWER: The allegations contained in paragraph 34 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 34.**

35.    Mr. Osbourne's treatment of Mr. Dukes continued long after Mr. Dukes reported the behavior to management and the hotline number.

**ANSWER: Defendant denies the allegations contained in paragraph 35 of Plaintiff's Verified Complaint.**

## COUNT II: DISCRIMINATION BASED ON RACE

36.    Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1)

through forty-one (41) above, as if fully set forth with particularity herein.

**ANSWER:**   **In answer to paragraph 36 of Plaintiff's Verified Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 35 as though fully stated herein.**

37.   Mr. Dukes' claims against Defendant arise under the Kentucky Civil Rights Act, KRS § 344 *et seq.* and relate to his employment at Tires Now.

**ANSWER:**   **In answer to paragraph 37, Defendant admits Plaintiff's Verified Complaint purports to allege causes of action under KCRA related to his employment at Tires Now but denies any violation of law occurred and that Plaintiff is entitled to damages or relief of any nature whatsoever.  To the extent paragraph 37 incorporates other allegations contained in Plaintiff's Verified Complaint, Defendant incorporates its responses and affirmative defenses to all such allegations as if fully set forth herein.  Defendant denies any averments and allegations contained in paragraph 37 not specifically admitted herein.**

38.   KRS § 344.040(1) states: "It is an unlawful practice for an employer [t)o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race…"

**ANSWER:**   **The allegations contained in paragraph 38 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states KRS § 344.040 speaks for itself and denies any violation KRS § 344.040 or other law occurred.**

39.   Mr. Dukes is an African-American and, therefore, falls into a protected class.

**ANSWER:** **The allegations contained in paragraph 39 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant admits upon information and belief, that Plaintiff is a member of the African-American race and is male.**

40.     Monro, Inc. is an employer withing the meaning of KRS § 344.

**ANSWER:**   **The allegations contained in paragraph 40 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant admits that Monro is an employer within the meaning of the Kentucky Civil Rights Act.**

41.     Mr. Dukes was a victim of adverse action, including discrimination, which was severe, pervasive, and seriously impacted Mr. Dukes' ability to perform his job.

**ANSWER:** **The allegations contained in paragraph 41 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 41.**

42.     The discrimination was based on Mr. Dukes' race. The discrimination bad the effect of unreasonably interfering with Mr. Dukes' work performance by creating an intimidating, hostile, offensive, and overbearing work environment.

**ANSWER:**   **The allegations contained in paragraph 42 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 42.**

43.     Mr. Dukes was subject to unequal treatment from his supervisors, as Caucasian employees were allowed to continue to work there five days a week schedule.

**ANSWER: The allegations contained in paragraph 43 of Plaintiff's Verified**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000011 of 000022

Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 43.

44.   Furthermore, Mr. Dukes is one of two African-Americans employed as truck drivers for Defendant.  Defendant has a history of discriminating against African-Americans.

**ANSWER:   Defendant denies the allegations contained in paragraph 44 of Plaintiff's Verified Complaint.**

45.   The other African-American truck driver was subject to discrimination when he was hurt on the job and was denied back pay.  Other Caucasian drivers have been hurt on the job and have not been denied back pay as a result of their injuries.

**ANSWER:   Defendant denies the allegations contained in paragraph 45 of Plaintiff's Verified Complaint.**

46.   All of these instances of misconduct by Defendant violate KRS § 344.

**ANSWER:   The allegations contained in paragraph 46 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 46.**

47.   Mr. Dukes is the only driver with a four day work week and has the seniority to have higher paying out of town routes.

**ANSWER:   Defendant lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 47 of Plaintiff's Verified Complaint and therefore denies the same.**

48.   Mr. Osbourne has denied Mr. Dukes the routes that every other Caucasian has the opportunity to receive.

**ANSWER:   Defendant denies the allegations contained in paragraph 48 of**

Plaintiff's Verified Complaint.

49.     As a direct and proximate cause of Defendant's actions described herein, Mr. Dukes has

suffered from a loss of income, emotional stress, and mental anxiety, for all of which he should be

compensated.

**ANSWER:   The allegations contained in paragraph 49 of Plaintiff's Verified**

**Complaint are legal conclusions to which no response is required.  To the extent a response**

**may be required, Defendant denies the allegations contained in paragraph 49.**

## COUNT II. RETALIATION UNDER KRS §344.280

50.     Plaintiff hereby incorporates each and every allegation contained in paragraphs one

(1) through thirty-three (33) above, as if fully set forth with particularity herein.

**ANSWER:   In answer to paragraph 50 of Plaintiff's Verified Complaint, Defendant**

**reaffirms and incorporates herein each and every allegation, matter, averment, denial or**

**affirmative defense made or set forth in its answers to paragraphs 1 through 49 as though**

**fully stated herein.**

51.     <u>KRS § 344.280</u> states: "It shall be an unlawful practice for a person... [t]o retaliate

or discriminate in any manner against a person because he has opposed a practice declared unlawful

by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated

in any manner in any investigation, proceeding or hearing…"

**ANSWER:   The allegations contained in paragraph 51 of Plaintiff's Verified**

**Complaint are legal conclusions to which no response is required.  To the extent a response**

**may be required, Defendant states <u>KRS § 344.280</u> speaks for itself and denies any violation**

**of <u>KRS § 344.280</u> or other law occurred.**

52.     Defendant specifically retaliated against Mr. Dukes' after he was involved in an

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000013 of 000022

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000014 of 000022

argument with Defendant by reducing Mr. Dukes' days worked a week from five to four.

**ANSWER:   The allegations contained in paragraph 52 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 52.**

53.     This retaliatory action bas caused Mr. Dukes to lose somewhere between $300-$400 a week and this sudden and significant loss of income has affected Mr. Dukes' mental health and financial security.

**ANSWER:   Defendant denies the allegations contained in paragraph 53 of Plaintiff's Verified Complaint.**

54.     Furthermore, Defendant specifically retaliated against Mr. Dukes by making him start everyone's vehicles for them, a practice that has never been a part of the standard operating procedure.

**ANSWER:   The allegations contained in paragraph 54 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 54.**

55.     Mr. Dukes did not feel comfortable doing so, due to the fact that many employees keep personal belongings in their vehicles. When Mr. Dukes stated that he was uncomfortable with performing this task, he was formally disciplined by Defendant for insubordination.  This formal write-up, a clear retaliatory action, could impact his job status in the future.

**ANSWER:   The allegations contained in paragraph 55 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 55.**

56.     Mr. Dukes' work schedule was reduced as a result of Mr. Dukes reporting his concerns

of the unfair treatment to the employee hotline and Ms. Jennings.

**ANSWER:   Defendant denies the allegations contained in paragraph 56 of Plaintiff's Verified Complaint.**

57.     These actions taken by Defendant violate KRS § 344.280, and they should be held liable for any damages accrued to Mr. Dukes.

**ANSWER:  The allegations contained in paragraph 57 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 57.**

58.

**ANSWER:   Paragraph 58 of Plaintiff's Verified Complaint is blank and therefore no response is required thereto.**

## COUNT IV: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59.     Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through fifty-three (53) above, as if fully set forth with particularity herein.

**ANSWER:   In answer to paragraph 59 of Plaintiff's Verified Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 58 as though fully stated herein.**

60.     Kentucky recognizes a cause of action for the intentional infliction of emotional distress absent any physical injuries when the following elements are shown: (I)  the wrongdoer acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) there is a causal connection  between the conduct and emotional distress; and (4)  the emotional  distress is severe. *Craft v. Rice*, 671 S.W.2d 247, 249 (Ky. 1984).

**ANSWER:   The allegations contained in paragraph 60 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant states the case law cited speaks for itself and denies any violation law occurred.**

61.    Mr. Dukes was subject to emotional distress when Defendant allowed Mr. Dukes' hours to be reduced and when they allowed Mr. Dukes to receive a written disciplinary write-up for insubordination.

**ANSWER:   The allegations contained in paragraph 61 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 61.**

62.    These actions have caused Mr. Dukes to suffer from emotional distress, as Mr. Dukes has lost a significant amount of income due to Defendant's actions and this along with his disciplinary write-up, have caused him severe stress about his future and ability to earn a living wage at Tires Now.

**ANSWER: The allegations contained in paragraph 62 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.  To the extent a response may be required, Defendant denies the allegations contained in paragraph 62.**

## COUNT V: CONSTRUCTIVE DISCHARGE

63.    Plaintiff hereby incorporates each and every allegation contained in paragraphs one (1) through fifty-seven (57) above, as if fully set forth with particularity herein.

**ANSWER:    In answer to paragraph 63 of Plaintiff's Verified Complaint, Defendant reaffirms and incorporates herein each and every allegation, matter, averment, denial or affirmative defense made or set forth in its answers to paragraphs 1 through 62 as though**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000016 of 000022

fully stated herein.

64.     Under Kentucky law, the standard for a constructive discharge claim is "whether, based upon objective criteria, the conditions created by the employer's actions are so intolerable that a reasonable person would feel compelled to resign." *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.,* 132 S.W.3d 790,807 (Ky. 2004).

**ANSWER:    The allegations contained in paragraph 64 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.   To the extent a response may be required, Defendant states the case law cited speaks for itself and denies any violation law occurred.**

65.     Mr. Dukes was subject to constructive discharge when his hours and pay were reduced to an amount that is far below his qualifications and seniority status. These actions were a calculated measure to ensure that Mr. Dukes had no other option but to quit his position and find new employment.

**ANSWER:    The allegations contained in paragraph 65 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.   To the extent a response may be required, Defendant denies the allegations contained in paragraph 65.**

66.     This instance shows that there were efforts made by Defendant to create an intolerable working condition for Mr. Dukes so that he would have no choice but to quit his job.

**ANSWER: The allegations contained in paragraph 66 of Plaintiff's Verified Complaint are legal conclusions to which no response is required.   To the extent a response may be required, Defendant denies the allegations contained in paragraph 66.**

67.     Mr. Dukes has not quit his job at Tires Now at the moment, but the conditions opposed to him, including the significant reduction in pay, are leaving very few options but to find new

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000017 of 000022

employment.

**ANSWER:     In answer to paragraph 67 of Plaintiff's Verified Complaint, Defendant admits Plaintiff has not quit his job at Tires Now.   Defendant denies the remaining allegations contained in paragraph 67.**

### PRAYER FOR RELIEF

WHEREFORE, Mr. Dukes prays that this Court:

1. Declare that Defendant's conduct is in violation of Mr. Dukes• rights and;

2. Award Mr. Dukes compensatory damages in such amounts as shall be proven at trial for his economic and other losses; and

3. Award Mr. Dukes back pay and/or damages equivalent to his lost wages from being unjustly reduced in his work schedule; and

4. Award Mr. Dukes damages in an amount to be proven at trial for his medical expenses which Defendants caused by their illegal actions toward him and;

5. Award Mr. Dukes damages in an amount to be proven at trial for the humiliation, embarrassment, personal indignity, emotional distress, and mental anguish which Defendant caused Mr. Dukes by their illegal actions toward him and;

6. Award Mr. Dukes costs, interests, and attorney's fees expended herein and;

7. Grant Mr. Dukes such further relief as this Court may deem just and proper.

**ANSWER:     Defendant denies Plaintiff is entitled to any relief or judgment requested in the WHEREFORE paragraph, including subparagraphs (1) through (7).**

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000019 of 000022

## DEMAND FOR TRIAL BY JURY

Plaintiff, Mr. Dukes, demands a jury to try all issues triable by jury.

**ANSWER:**       **Defendant requests a jury trial on all issues so triable.**

## GENERAL DENIAL

To the extent not expressly admitted above, Defendant denies each and every allegation, count, claim, and prayer in Plaintiff's Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

In addition to the defenses and denials set forth above, Defendant asserts the following affirmative and other defenses. In pleading these defenses, Defendant does not admit it bears the burden of proof, production, or persuasion on such defenses. Defendant reserves the right to raise any and all counterclaims and additional defenses, including, but not limited to, affirmative defenses that may become apparent at any time during the course of this litigation.

1.       Plaintiff's Verified Complaint fails to allege, in whole or in part, claims for which relief may be granted under applicable law.

2.       Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation to the extent any of the alleged discriminatory conduct (which is denied) occurred more than five years prior to the filing of this action.

3.       Any actions taken by Defendant with respect to Plaintiff's employment were based upon good faith, legitimate, non-discriminatory, non-retaliatory reasons, and not in violation of the Kentucky Civil Rights Act or any other statutes, law, rule, regulation or ordinance prohibiting discrimination based on race or any other protected category and were carried out in a good faith exercise of Monro's reasonable business judgment.

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000020 of 000022

4.      Monro acted at all times in good faith and took all actions based upon legitimate business necessity.

5.      Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to mitigate any damages he allegedly incurred.

6.      To the extent the Plaintiff recovers damages based on his claims, the existence of which Defendant specifically denies, Defendant is entitled to a setoff or credit for amounts the Plaintiff earned or received or could have earned or received through reasonable efforts on his part.

7.      Any employment actions taken toward the Plaintiff were taken for reasonable factors other than race.

8.      To the extent Plaintiff has suffered any compensatory or emotional distress damages, which Defendant expressly denies, there are intervening and other causes for such damages other than any actions taken by Defendant.

9.      Without conceding the burden of proof, liability, or that Plaintiff was damaged by any actions of Defendant, any alleged harm suffered by Plaintiff is subject to apportionment based on other stresses in Plaintiff's life unrelated to his employment.

10.     To the extent Plaintiff suffered any damages claimed, which Defendant expressly denies, Plaintiff's own actions contributed to any such damages, whether in whole or in part.

11.     Plaintiff's claims are barred to the extent there was no causal connection between the events alleged in the Verified Complaint and any damages Plaintiff allegedly suffered.

12.     Any causal link between Plaintiff's alleged protected activities, which Defendant expressly denies, and any actions Defendant took regarding Plaintiff's employment were broken by intervening events that, by themselves, were enough to independently cause disciplinary actions regarding Plaintiff.

5D87B785-0D9A-4C9C-9719-0FD93F81D6EB : 000021 of 000022

13.     To the extent Plaintiff has suffered any compensatory or emotional distress damages, which Defendant expressly denies, there are intervening and other causes for such damages other than any actions taken by Defendant.

14.     Defendant would have made the same employment decisions with respect to Plaintiff absent any alleged unlawful or impermissible considerations, the existence of which Defendant specifically denies.

15.     Defendant exercised reasonable care to prevent and correct any discriminatory and/or harassing behavior, the existence of which is specifically denied.  Monro, among other things, has a written policy in place regarding prohibited discriminatory behaviors that provides multiple avenues to complain.  The Plaintiff failed to take advantage of Monro's preventative or corrective opportunities to him.

16.     Plaintiff's claims are barred, in whole or in part by the doctrines of release, waiver, consent, estoppel, laches, and/or unclean hands.

17.     Defendant reserves the right to assert additional defenses as they become known to it through discovery and/or investigation of this matter.

WHEREFORE, Defendant requests the following relief:

  (a) Dismissal of Plaintiff's Verified Complaint in its entirety and with prejudice;

  (b) Defendant's costs and attorneys' fees incurred to the fullest extent allowed by law; and

  (c) Any and all other relief to which it is entitled.

Respectfully submitted,

*/s/ Blaine R. Blood*
Gregory L. Taylor
Blaine R. Blood
EDDINS · DOMINE LAW GROUP, PLLC
3950 Westport Road
Louisville, Kentucky 40207
Phone: (502) 893-2350
Email: gtaylor@louisvillelawyers.com
Email: bblood@louisvillelawyers.com

*Counsel for Monro, Inc.*

## CERTIFICATE OF SERVICE

I certify that a copy of Defendant's Answer to Plaintiff's Verified Complaint was served

by electronic mail on June 2, 2022, addressed to the following:

Samuel G. Hayward Jr.
Adams Hayward & Welsh
4035 Preston Highway
Louisville, KY 40213
(502) 366-6456
sghayw@gmail.com

*Counsel for Plaintiff*

/s/*Blaine R. Blood*
Attorney for Defendant